1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## EASTERN DISTRICT OF CALIFORNIA

10

11 | ELRADER BROWNING, III,

Case No. 1:11-cv-00598 DLB PC

12 |             Plaintiff,

ORDER REGARDING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

13 |      v.

14 | GRIMM,

(Document 25)

15 |             Defendant.

16

17        Plaintiff Elrader Browning, III ("Plaintiff") is a California state prisoner proceeding pro se

18 and in forma pauperis in this civil action pursuant to 42 U.S.C. § 1983.  Pursuant to the November 8,

19 2011, order, this action is proceeding against Defendant N. Grimm, R.N. for deliberate indifference

20 to a serious medical need in violation of the Eighth Amendment.[1]

21        On December 12, 2012, Defendant filed this motion for summary judgment.[2]  Plaintiff filed

22 his opposition on February 7, 2013, and Defendant filed a reply on February 8, 2013.

23 **I.        OBJECTION TO SURREPLY**

24        On February 27, 2013, Plaintiff filed a document entitled, "Amendment to Opposition."

25 Defendant objected to the filing on February 28, 2013, on the basis that the document is an

26 unauthorized surreply.

27 ───────────────
[1]  The parties consented to the jurisdiction of the United States Magistrate Judge for all purposes.

28 [2]  In Defendant's December 12, 2012, notice, filed concurrently with the motion for summary judgment, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment.  Klingele v. Eikenberry, 849 F.2d 409, 411-412 (9th Cir. 1988).

1  The Local Rules of this Court and the Federal Rules of Civil Procedure do not generally

2  permit the filing of a surreply. See L.R. 230(l) (matter is generally submitted after movant files and

3  serves reply). The Court did not request a surreply from Plaintiff.  Moreover, the requirements of an

4  opposition to a motion for summary judgment were provided to Plaintiff, in detail, in Defendant's

5  December 12, 2012, notice.

6  The Court sustains Defendant's objection.  However, the Court notes that the statements

7  made in the surreply would not have altered the Court's ultimate decision.

8  **II.   LEGAL STANDARD**

9  Summary judgment is appropriate when it is demonstrated that there exists no genuine

10  dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law.

11  Fed. R. Civ. P. 56(a).  Under summary judgment practice, the moving party

13  always bears the initial responsibility of informing the district court of the basis for its
motion, and identifying those portions of "the pleadings, depositions, answers to

14  interrogatories, and admissions on file, together with the affidavits, if any," which it
believes demonstrate the absence of a genuine issue of material fact.

15  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the

16  burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in

17  reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"

18  Id. at 324.  Indeed, summary judgment should be entered, after adequate time for discovery and upon

19  motion, against a party who fails to make a showing sufficient to establish the existence of an

20  element essential to that party's case, and on which that party will bear the burden of proof at trial.

21  Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's

22  case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment

23  should be granted, "so long as whatever is before the district court demonstrates that the standard for

24  entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

25  If the moving party meets its initial responsibility, the burden then shifts to the opposing

26  party to establish that a genuine dispute as to any material fact actually does exist.  Matsushita Elec.

27  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

28

1    In attempting to establish the existence of this factual dispute, the opposing party may not

2    rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form

3    of affidavits, and/or admissible discovery material, in support of its contention that the dispute

4    exists. Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586, n.11.  The opposing party must

5    demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit

6    under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Thrifty Oil Co.

7    v. Bank of Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2002); T.W. Elec. Serv.,

8    Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is

9    genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

10   party, Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Wool v. Tandem

11   Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

12   In the endeavor to establish the existence of a factual dispute, the opposing party need not

13   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

14   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

15   trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the

16   pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

17   Matsushita, 475 U.S. at 587 (quoting former Rule 56(e) advisory committee's note on 1963

18   amendments).

19   In resolving a motion for summary judgment, the court examines the pleadings, depositions,

20   answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ.

21   P. 56(c).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all

22   reasonable inferences that may be drawn from the facts placed before the court must be drawn in

23   favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369

24   U.S. 654, 655 (1962) (per curiam)).

25   Finally, to demonstrate a genuine dispute, the opposing party "must do more than simply

26   show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as a

27   whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

28   issue for trial.'"  Matsushita, 475 U.S. at 586-87 (citations omitted).

3

1   **III.   UNDISPUTED FACTS**

2      Plaintiff is a prisoner in the custody of the California Department of Corrections and is

3   currently housed at Corcoran State Prison ("CSP") in Corcoran, California.  ECF No. 37.  The events

4   at issue occurred while Plaintiff was incarcerated at CSP.  Pl.'s Dep. 12:9-10.

5      At all times relevant, Defendant Grimm was a licensed registered nurse employed at CSP in

6   the Mental Health Crisis Bed ("MHCB") unit.  Grimm Decl. ¶ 2.

7      On May 31, 2010, Plaintiff cut his penis with a razor blade in an attempt to circumcise

8   himself.  Pl.'s Dep. 13:9-18.  Plaintiff tried to circumcise himself because he had recently converted

9   to Judaism.  Pl.'s Dep. 16:5-7.

10     Plaintiff was transferred to the emergency room at San Joaquin Community Hospital in

11  Bakersfield for medical treatment.  The wound was sutured and dressed, and Plaintiff was treated

12  with antibiotics.  Crawford Decl. Ex B; Pl.'s Dep. 16:13-22.  Plaintiff returned to CSP the same day

13  and was placed in the MHCB unit for psychotic management and wound care.  Defendant was

14  assigned as Plaintiff's nurse in the MHCB unit.  Grimm Decl. ¶ 3; Crawford Decl. Ex. B; Pl.'s Dep.

15  17:8-10.

16     On June 1, 2010, Defendant Grimm came to Plaintiff's cell to change the wound dressing.

17  Grimm Decl. ¶ 4; Pl.'s Dep. 19:1-4.  Correctional Officers Slauter and Nava handcuffed Plaintiff and

18  stood watch in the cell while Plaintiff received medical care.  Grimm Decl. ¶ 4; Pl.'s Dep. 19:8-17.

19  Defendant Grimm put gloves on before she handled sterile supplies, and she had gloves on when she

20  entered Plaintiff's cell.  Grimm Decl. ¶ 6; Pl.'s Dep. 22:15-17.  Prior to entering, Defendant gathered

21  supplies and placed them on a sterile tray.  Grimm Decl. ¶ 6; Pl.'s Dep. 22:7-17.  The tray fell into

22  the toilet and Defendant retrieved it.  Grimm Decl. ¶ 8; Pl.'s Dep. 22:22-24:1.

23     After the tray was retrieved, Plaintiff refused to allow Defendant Grimm to complete the

24  dressing change and he pulled away from her.  Grimm Decl. ¶ 9; Pl.'s Dep. 26:23-27:1.  Officers

25  Nava and Slauter held Plaintiff by his upper arms so that Defendant could finish dressing the wound.

26  Grimm Decl. ¶ 9; Slauter Decl. ¶ 6; Pl.'s Dep. 27:20-28:5.  Defendant Grimm then finished dressing

27  the wound.  Grimm Decl. ¶ 10; Pl.'s Dep. 28:6-8.  Defendant and the officers exited Plaintiff's cell.

28  Grimm Decl. ¶ 10; Slauter Decl. ¶ 6; Pl.'s Dep. 28:18-19.

Once they left the cell, Plaintiff took off the dressing.  Crawford Decl. Ex. C; Slauter Decl. ¶ 7; Pl.'s Dep. 28:18-20.  Plaintiff asked to talk to the sergeant and Dr. Kim.  Grimm Decl. ¶ 11; Pl.'s Dep. 2828:18-20.  Dr. Kim came to Plaintiff's cell, observed the dressing and said it appeared fine. Grimm Decl. ¶ 11 and Ex. B.  Defendant asked the sergeant if she could give Plaintiff supplies to dress the wound himself, and he approved the request.  Grimm Decl. ¶ 13.  She provided Plaintiff with the supplies and instructed him how the complete a sterile dressing change.  Grimm Decl. ¶ 13; Slauter Decl. ¶ 7; Pl's Dep. 30:6-21.  Plaintiff completed the dressing changes himself, daily, through June 5, 2010, when he was discharged from the MHCB unit.  Barnett Decl. Ex. B; Grimm Decl. ¶ 14; Pl.'s Dep. 31:24-32:1.  Plaintiff did not wear gloves during the dressing changes, but he states that he washed his hands.  Pl.'s Dep. 30:24-31:4.  Plaintiff did not allow Defendant to watch him change the dressings.  Grimm Decl. ¶ 13.  He did not notice any signs of infection during that time, nor did he report any.  Crawford Decl. Ex. A; Pl.'s Dep. 32:5-14.  Nursing notes from June 1, 2010, through June 4, 2010, document healing of the laceration with no discomfort, discharge or redness.  Barnett Decl. ¶¶ 8, 11 and Ex. C.[3]

On June 5, 2010, a nurse documented some swelling around the stiches.  Barnett Decl. ¶ 8 and Ex. C.  Plaintiff was instructed to lie down and elevate his penis.  By June 6, 2010, the swelling had resolved and there were no other signs of an infection.  Barnett Decl. ¶ 8 and Ex. C.

Approximately one week after the injury, the sutures were removed.  Barnett Decl. ¶ 8 and Ex. D; Pl.'s Dep. 33:1-20.  Plaintiff continued changing his own dressings through June 15, 2012. He states that he washed his hands each time before he changed the dressing.  Pl.'s Dep. 35:25-34:11.

On June 15, 2010, Plaintiff thought that something about the wound was not right.  Plaintiff claimed to be suicidal so that he would be taken to the emergency room.  Barnett Decl. ¶ 9; Pl.'s Dep. 35:1-24.  Once he was examined at the emergency room, he was sent to an outside hospital. Barnett Decl. ¶ 9 and Ex. D; Pl.'s Dep. 35:1-24.  Upon examination, the wound showed reasonable healing, with mild scabbing over the wound, some moist discharge and some swelling.  Plaintiff did

---

[3] Defendant submits the Declaration of Bruce Barnett, M.D., in support of summary judgment.  Dr. Barnett is CDCR's Chief Medical Officer in the Receiver's Office of Legal Affairs.  Barnett Decl. ¶ 1.  He reviewed the medical records and offered his opinion based on his professional knowledge and experience.  Plaintiff did not object to his opinions.

not have a fever.  Barnett Decl. ¶ 9 and Ex. D.  A urology examination performed the same day

showed no obvious infection at the incision cite.  The wound was healing and had "almost healed."

Barnett Decl. ¶ 9 and Ex. E.  Plaintiff received antibiotics, with continued elevation, and wound

irrigation at the hospital.  He was transferred back to CSP hospital on June 16, 2010, for continued

local antibiotics and wound care.  Barnett Decl. ¶ 9 and Ex. F.

On June 17, 2010, Plaintiff's infection was resolving.  He was discharged from CSP hospital

to the MHCB unit on June 17, 2010, for further psychiatric care.  Barnett Decl. ¶ 9 and Ex. G.

Plaintiff was discharged from the MHCB unit on July 2, 2010.  Discharge notes state that the wound

was healing without signs or symptoms of infection.  Barnett Decl. ¶ 9 and Ex. G.

Plaintiff has no continuing problems because of the wound infection in June 2010.  Crawford

Decl. Ex. D.

Defendant Grimm treated Plaintiff only once, on June 1, 2010.  Grimm Decl. ¶ 14.  Had she

caused an infection, the time for it to manifest would have been between 48-72 hours, or no later

than June 4, 2010.  Barnett Decl. ¶ 11.  Nursing notes from June 1, 2010, through June 4, 2010,

document healing of the laceration with no discomfort, discharge or redness.  Barnett Decl. ¶¶ 8, 11

and Ex. C.

## IV.   DISPUTED FACTS

### A.   Defendant's Disputed Facts

While she was outside of Plaintiff's cell, Defendant placed three to four 4x4 gauze pads and

one to two petroleum gauze packets on a sterile paper tray.  The supplies were unopened, in sterile

packaging when she placed them on the tray.  Defendant also filled a small paper cup with normal

saline.  She entered Plaintiff's cell, wearing sterile gloves, and placed the paper tray, with the

unopened supplies, on the sink.  Grimm Decl. ¶ 6.

Once in the cell, Defendant instructed Plaintiff to stand and lean over the toilet so she could

pour the saline over the wound.  The sutures were intact and there were no signs of infection or

bleeding.  Defendant poured the normal saline over the wound.  Grimm Decl. ¶ 7.  Pursuant to her

standard practice, she then opened one 4x4 gauze pad and immediately placed it on Plaintiff's penis

to dry off the excess saline.  Grimm Decl. ¶ 7.  Next, she opened a petroleum gauze packet and

immediately laid the petroleum gauze on Plaintiff's wound.  Less than one minute passed between the time she poured saline over the wound to the time the wound was completely covered with the petroleum gauze.  Grimm Decl. 7.

As she was tucking the petroleum gauze around the bottom of Plaintiff's penis, he suddenly jerked away from her.  Defendant did not pull on Plaintiff's penis when he pulled away and she did not cause any of the stiches to rip.  Plaintiff's jerking motion did not cause any sutures to rip. Grimm Dec. ¶ 7.

When Plaintiff jerked away, he caused the paper tray to fall from the sink into the toilet.  The paper tray floated on top of the water and no water got on top of the tray.  Defendant retrieved the tray from the toilet and placed it back on the sink.  All of the supplies on the tray were wrapped and at no time did any of the water touch the wrapped supplies on the tray.  Grimm Decl. ¶ 7.

After placing the tray back on the sink, Defendant immediately changed her gloves.  At this point, Plaintiff refused to allow Defendant to continue with the dressing.  Grimm Decl. ¶¶ 8, 9. Defendant completed the change with the assistance of Officers Nava and Slauter.  All sutures were intact and there was no sign of bleeding.  Grimm Decl. ¶ 10.  When Plaintiff removed the dressing after they had left the cell, Defendant noticed a small amount of blood on the dressings.  She assumed that Plaintiff caused the wound to bleed because he removed the dressing too quickly. Grimm Decl¶ 12.

It is Defendant's standard practice to only use sterile supplies to dress wounds.  Grimm Decl. ¶ 9.  The supplies she used where sterile because they never got wet and never touched the paper tray after they were opened.  Grimm Decl. ¶ 9.  At all times, Defendant believed that all of the supplies were sterile and posed no risk to Plaintiff's health or safety.  Grimm Decl. ¶ 9.  She did not intentionally or knowingly cause Plaintiff to experience any pain, suffering or injury.  Defendant did not act with deliberate indifference to Plaintiff's medical needs.  Grimm Decl. ¶¶ 16, 17.

B.    Plaintiff's Disputed Facts

Defendant Grimm pulled up to Plaintiff's cell with a cart.  Pl.s' Dep. 20:5-6.  When she took the supplies out of the cart, they were wrapped, but then she opened them and laid them on top of the tray.  Pl.'s Dep. 22:10-14.  When she came into the cell, Defendant wanted Plaintiff to kneel down

over the toilet and place his penis on the lip of the toilet so that she could pour water and solution on it.  Plaintiff told her that he would not place his penis on the toilet because it was unsanitary.  Defendant then said hold on, and she went and got a paper tray.  She put the paper tray on the toilet and when Plaintiff went to kneel down, "the paper tray fell into the toilet because she was trying to adjust it, and it fell into the toilet."  Defendant then took the paper tray out of the toilet and put it on Plaintiff's sink.  Pl.'s Decl. ¶ 6; Pl.'s Dep. 22:25-23:11.  The whole tray got wet and was dripping water.  Pl.'s Dep. 24:5-8.  The paper tray did not float on top of the water because it was too wide to fit inside the toilet that way, it could only fit "going nose first."  Pl.'s Decl. ¶ 11.

Defendant changed her gloves after the paper tray fell into the toilet and then opened a new package of dressing and placed them on top of the tray.  Pl.'s Decl. ¶ 7; Pl.'s Dep. 26:13-22.

Plaintiff then pulled away from Defendant because he didn't want her to put the gauze that was on top of the contaminated tray onto his open wound.  When he pulled away, Defendant grabbed him.  Pl.'s Dep. 27:1-22.  The laceration was bleeding when Defendant grabbed him.  Pl.'s Dep. 28:23-25.  The officers then told Plaintiff to stop moving and he was held firmly by the officers.  Pl.'s Dep. 27:20-25.  Plaintiff told Defendant that he did not want her to use the dressing, though he does not recall if he told her why.  Pl.'s Decl. ¶ 8; Pl.'s Dep. 28:9-15.  Defendant then completed the dressing using gauze that she had placed on top of the contaminated tray.  Pl.'s Dep. 10-14.

## V.    DISCUSSION

### A.    Eighth Amendment Standard

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted).  While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain.  Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted). To maintain an Eighth Amendment claim, inmates must show deliberate indifference to a substantial risk of harm to their health or safety. E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1151-52 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

For claims arising out of medical care in prison, Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)).

Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012) (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122. Deliberate indifference may be shown "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096) (internal quotation marks omitted).

B.    Analysis

As set forth above, the parties present very different factual scenarios as to the events occurring in Plaintiff's cell. However, even taking Plaintiff's factual description as true, he has failed to produce at least some significant probative evidence tending to show that Defendant's actions were deliberately indifferent.

According to Plaintiff, after the tray fell into the water, Defendant retrieved it, put on new gloves and got new dressing in an unopened package. Defendant then opened the package and set

9

the dressing onto the wet, contaminated tray.  Plaintiff pulled away from her because he didn't want her to use the contaminated dressing.  When Plaintiff pulled away, Defendant "grabbed" him and caused his penis to bleed.  Over Plaintiff's objections and while he was being held by the officers, Defendant used the dressing that had been placed onto the wet, contaminated tray to complete dressing Plaintiff's wound.  Plaintiff states that he told Defendant that he did not want her to use the dressings, though he can't remember if he told her why.

These facts are insufficient to demonstrate that Defendant acted with deliberate indifference.  First, there is no evidence that Defendant knew of, and disregarded, an excessive risk of harm to Plaintiff.  Plaintiff states that he objected to the dressing, but he doesn't remember if he told Defendant why.  Plaintiff does not dispute Defendant's belief that all of the supplies were sterile and posed no risk to his health or safety.  "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'"  Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Similarly, even if Defendant "grabbed" Plaintiff as he pulled away and caused the wound to bleed, there is no evidence that this was done with the requisite state of mind.  Deliberate indifference requires "subjective recklessness, which entails more than ordinary lack of due care."  Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012) (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

At most, Defendant's actions were grossly negligent, but even gross negligence by a physician does not support an Eighth Amendment claim.  Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

Second, Plaintiff fails to establish a connection between Defendant's alleged actions and his infection.  It is undisputed that had Defendant caused the infection on June 1, 2010, the only time she treated Plaintiff, the time for the infection to manifest would have been between 48-72 hours, or no later than June 4, 2010.  Nursing notes from June 1, 2010, through June 4, 2010, document healing of the laceration with no discomfort, discharge or redness.

1    In his declaration, Plaintiff states that it "is [his] opinion that she caused this infection…"

2    Pl.'s Decl. ¶ 10.  However, Plaintiff cannot defeat summary judgment by tendering his own opinion

3    about the cause of the infection.

4    Finally, insofar as Plaintiff now suggests that Officers Nava and Slauter violated his Eighth

5    Amendment rights by restraining him, such a claim was not before this Court.  Plaintiff's operative

6    complaint makes does not make any Eighth Amendment allegations against non-parties Officer

7    Nava or Slauter, and simply refers to them as "witnesses to the event."  Compl. 3.

8    Therefore, based on the above and viewing all evidence in a light most favorable to Plaintiff,

9    there are no genuine dispute as to any material fact, and Defendant is entitled to judgment as a

10   matter of law.

11                                                    **<u>ORDER</u>**

12   Defendant's Motion for Summary Judgment is GRANTED.  Judgment SHALL BE entered

13   in favor of Defendant Grimm and against Plaintiff.

14   This terminates this action in its entirety.

15

16   IT IS SO ORDERED.

17   Dated:   __**August 8, 2013**__                        _____ /s/ *Dennis L. Beck*

18                                                         UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28